## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20CR64 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| TERENCE HESTER, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, SR. J.:

Defendant Terence Hester asks the Court to suppress a witness's identification of him because of due process concerns. While the Court agrees that the detective used suggestive means to acquire the identification, the totality of the circumstances reflects the reliability of the identification. Therefore, the Court allows the jury to view the evidence and **DENIES** Defendant's Motion (Doc. 22).

## I.    BACKGROUND FACTS

The Vice Unit of the Cleveland Police Department investigated "Max," a suspected narcotics dealer operating throughout Cleveland. Detective Larry Smith led the investigation, which culminated with a "buy-bust" operation the night of October 22, 2019. A "buy-bust" operation is one where investigators (using a confidential source) set up a drug "buy" with a suspected dealer and then "bust" the dealer once the buy is completed.

On the night of the operation, Detective Smith and the confidential reliable informant (CRI) parked in anticipation of the buy. While parked, a vehicle approached Detective Smith's location from the opposite direction, conducting a "slow-roll" as the car passed. This slow roll

allowed Detective Smith to see the driver, while the CRI identified the passenger as Max, the target of the investigation.

Both vehicles repositioned.  Afterwards, the CRI approached the passenger side of the suspect vehicle.  The CRI entered, exited, and returned to Detective Smith two or three minutes later.  Upon the CRI's return, the CRI produced narcotics for Detective Smith.  The "buy" had been successful.

Now it was time for the "bust."  But before police converged on Max's location, and as the CRI returned to Detective Smith, a third person approached and entered the vehicle.  After a few minutes (while Detective Smith verified the buy), Detective Smith called for the take down and police swarmed the vehicle.  As they did, both the driver and passenger fled.  The female remained and the police took her into custody.  The police then pursued the driver and passenger, ultimately apprehending the passenger Max (later identified as co-defendant Michael Austin), while the driver escaped.

After the initial commotion, detectives processed the scene.  They found various drugs and a gun outside the vehicle.  Inside, they found paperwork (a school receipt and car rental forms) bearing the name "Terence Hester."  They found additional narcotics and currency scattered throughout. The police also spoke with the female, who lied about her name, birthdate, address, drug use and failed to provide a social security number.  She was apprehended and taken into custody for violating Ohio drug laws.  Investigators later identified her as Leah Hoover.

The paperwork inside the vehicle made its way back to Detective Smith's office.  Upon reading the name, Detective Smith searched a law enforcement database, narrowing his search based on a similar age of Austin.  Defendant's picture resulted, which Detective Smith

immediately identified as the driver of the suspect vehicle he saw earlier that night.  He printed Defendant's pictures for later use.

The next morning, with Defendant's picture in hand, Detective Smith visited Hoover at Cuyahoga County Jail.  This interview was not recorded.  But based on Hoover's testimony at the hearing, Detective Smith showed her a picture of both Austin and Defendant, asking if they looked familiar.  Hoover replied yes, knowing Austin from childhood, and she identified Defendant as the driver of the car.

Because he did not record the first interview, Detective Smith asked Hoover to come to headquarters to memorialize her remarks.  Hoover complied and came to the department the following day, October 24.  During this interview, Hoover admitted to contacting Austin to purchase heroin for the second time that day.  She then again identified Defendant's photograph as the driver of the vehicle, while professing she did not know him personally.

Based on the foregoing, a Grand Jury indicted both Austin and Defendant on narcotics charges.  Defendant moved to suppress Hoover's identification (Doc. 22) and the Government opposed (Doc. 23).  On March 10, 2021, the Court held a hearing.

## II.    LAW & ANALYSIS

### A.    Standard of Review

Due process concerns operate as a check on the government "when police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  *Perry v. New Hampshire*, 565 U.S. 228, 231-32 (2012).  Generally, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."  *Stovall v. Denno*, 388 U.S. 293, 302 (1967).  However, the use of a single photograph to elicit an identification is not *per se* unconstitutional.  *See generally*,

*Mason v. Brathwaite*, 432 U.S. 98 (1977). Rather, courts must look at the totality of the circumstances to determine if the identification was reliable even though the identification procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

Thus, courts engage in a two-step process to determine if the identification procedure violates the defendant's due process rights. *Perry*, 565 U.S. at 238-39. At step one, defendant must show that the police used an unnecessarily suggestive identification procedure. *Id.* If police did not, the inquiry ends. If they did however, the court moves to step two.

At step two, the court considers whether the improper identification procedure so tainted the resulting identification as to render it unreliable and therefore inadmissible. *Id.* at 239. The burden also shifts to the government "to prove that the identification was reliable independent of the suggestive identification procedure." *United States v. Campbell*, 609 F. Supp. 2d 674, 692 (E.D. Mich. 2009). In making this determination, a court utilizes the five (non-exhaustive) *Biggers* factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.

Ultimately, the court, after considering all the circumstances, must determine if "there is 'a very substantial likelihood of irreparable misidentification.'" *Brathwaite*, 432 U.S. at 116 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Short of this threshold, "such evidence is for the jury to weigh." *Id.*; *see also United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004) ("as long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification").

- 4 -

**B.      Suggestive Procedure**

As previously mentioned, the use of a single picture during an identification procedure is condemned, but not unconstitutional *per se*.  *See also*, *Simmons*, 390 U.S. at 383 (identifications arising from single-photograph displays may be viewed in general with suspicion).  Here, there is no dispute that Detective Smith showed Hoover multiple pictures of only Defendant.

The Court agrees that this was suggestive.  Key to step one is the necessity of the procedure.  *See Perry*, 565 U.S. at 238-39 (defendant must show that the police used an *unnecessarily* suggestive identification procedure) (emphasis added); *United States v. Weiss*, 168 F. Supp. 3d 856, 862-63 (E.D. Va. 2016) (finding no suggestive procedure by using a single photograph to identify a suspect given the exigent circumstances facing authorities).  Here, there is no mention of necessity.  In fact, Detective Smith testified to the exact opposite—it was a casual encounter as opposed to an emergency or with a victim of a more invasive crime.  This non-emergent situation does not authorize a cavalier approach to photo identifications.

Moreover, Defendant's recitation of Ohio law, while not dispositive on the issue, certainly highlights the harms public policy seeks to avoid in identification procedures.  *See* OHIO REV. CODE § 2933.83.

Thus, the Court agrees that Detective Smith's use of Defendant's photograph was unduly suggestive.  However, this does not end the analysis.  Rather, the Court proceeds to step two, which considers the totality of the circumstances of Hoover's identification.

**C.      Totality of the Circumstances**

Hoover's identification was reliable even after considering Detective Smith's suggestive procedure.  A review of the *Biggers* factors confirms this.  First, Hoover had a good opportunity to view Defendant.  She was in the vehicle for a minute or two (at a minimum).  She sat in the

backseat, behind the passenger, thus giving her the appropriate angle to view the driver.  During her brief conversation with Austin, Defendant was facing the passenger, looking in her direction. While Hoover was a drug addict at the time of incident, there was no evidence that she was under the influence while in the car.

As for Hoover's degree of attention, much of the same evidence above supports this factor.  Moreover, she was within a few feet of the driver and comfortable being in the car with Defendant and Austin.

Hoover did not previously describe the driver to the police at any time, although she testified that investigators did not ask her to describe the driver.

Most supportive of Hoover's reliability was her level of certainty.  During the first identification while in custody, Hoover testified that she identified Defendant as the driver of the vehicle.  The second (video recorded) interview demonstrates the same, as well as Hoover's certainty.  She immediately identified the photograph as the driver.  At no time during her testimony—especially while facing vigorous cross-examination—did Hoover waiver in her identification.  She was sure the pictured person was the driver and the Court finds her certainty supports her identification's reliability.

Finally, the time between the first identification and her time in the car was not lengthy. Rather, the first identification took place the next morning.  The second identification occurred the following day.  Thus, within the span of two days, Hoover made two confident identifications of Defendant as the driver.

While not a factor of *Biggers*, the Court also finds that the lack of external pressure favors the identification's reliability.  Yes, Hoover had been arrested and facing charges.  But both Detective Smith and Hoover testified that nothing had been exchanged for Hoover's

identification of Defendant as the driver.  This testimony is bolstered by Detective Smith's confidence in his own identification of Defendant[1]—as he testified, he did not even need Hoover to make an identification.

Balancing these factors against the corrupting effect of showing Hoover a single photograph of Defendant two times after the incident, the Court finds that the totality of the circumstances reflects the reliability of Hoover's identification.  Ultimately, the Court does not find a 'very substantial likelihood of irreparable misidentification.'  Rather, it is for the jury to decide the credibility of Hoover's identification.

### III. CONCLUSION

The Court understands Defendant's objection and joins the number of courts condemning the use of a single photo to identify a suspect.  But the totality of the facts demonstrates the reliability of Hoover's identification.  Thus, the Government may present Hoover's identification as evidence and the trier of fact can ultimately weigh the credibility of the evidence.  Accordingly, the Court **DENIES** Defendant's Motion to Suppress (Doc. 22).

**IT IS SO ORDERED.**

 s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: March 19, 2021**

---

[1] The Government argues that the reliability of Detective Smith's identification props up the reliability of Hoover's identification.  The Court disagrees.  While both Detective Smith's and Hoover's identification may give a jury more evidence of Defendant's involvement, Detective Smith's identification individually does not make Hoover's identification any more reliable.